[No. A087299. First Dist., Div. Five. June 12, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
TROY SMITH, Defendant and Appellant.

## COUNSEL

Louise H. Renne, City Attorney, Patrick J. Mahoney and Brian Gearinger, Deputy City Attorneys for Plaintiff and Respondent.

Serra, Lighter, Bustamante, Michael & Wilson and David M. Michael for Defendant and Appellant.

## OPINION

**KRAMER, J.**[*]—Defendant Troy Smith appeals an order granting a motion by the City and County of San Francisco (County), on behalf of the People of the State of California, for reimbursement of legal services rendered to him (Pen. Code,[1] § 987.8). He contends he was not given notice required under section 987.8, subdivision (f), that he may be subject to such reimbursement, and the trial court erred in ordering the County to collect the amount of reimbursement from funds seized from him upon his arrest and held by the court. We affirm the order of the trial court.

### BACKGROUND

Between 1990 and August 1998 appellant and his brother, Dino, were the subject of criminal prosecutions in two San Francisco Superior Court cases (Nos. 137255 and 143113). The record before us does not clearly establish the offenses of which appellant was charged, convicted and sentenced.

*Case No. 137255*

Appellant was arrested in 1990 and convicted in 1991. In 1994 his conviction was reversed on appeal, and in January 1996, following a retrial, he was again convicted. At the time of appellant's 1990 arrest $49,542 was seized from him. The money was the subject of an asset forfeiture proceeding, which the district attorney apparently dismissed on December 31, 1998.

*Case No. 143113*

Appellant was convicted in 1994, and on March 7, 1996, was jointly sentenced on cases Nos. 137255 and 143113. Thereafter this court directed the trial court to conduct a hearing on appellant's habeas corpus petition. In

[*]Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All undesignated section references are to the Penal Code.

August 1998, after his habeas corpus petition was granted, appellant's sentence in case No. 143113 was ordered vacated. Thereafter he pled guilty to various charges and was sentenced.

*Motion for Reimbursement*

In December 1998 appellant moved for release of the funds seized from him.[2] Thereafter, the County filed the subject motion for reimbursement of attorney fees and costs incurred on appellant's behalf since 1990. At the February 3, 1999 hearing on the motion for reimbursement the parties stipulated that the County would not seek reimbursement for attorney fees and costs expended prior to October 19, 1994, because it had waived its right to reimbursement under a September 28, 1994 release agreement settling two civil rights actions brought by him against the County (*Smith v. City and County of San Francisco* (Super. Ct. S.F. City and County, No. 855197); and *Smith v. Hennessey* (N.D.Cal., No. C92-2444-WHO)).

At the conclusion of the hearing the court requested additional briefing on whether appellant had sufficient notice that he may be liable for reimbursement, and an accounting of the County's legal expenses in representing appellant.

The County's supplemental briefing sought reimbursement of $20,381.79 solely for legal services rendered to appellant in 1997 and 1998 by his court-appointed attorneys, Paul Couenhoven and Erwin Fredrich, and the court-appointed investigator, Kohler & Associates. Documents attached to the declaration of the County's counsel, George Akwo, established that (1) Couenhoven (a) was appointed in December 1997 by Judge Dondero to represent appellant in connection with his habeas corpus proceeding in case No. 143113, (b) represented appellant through early May 1998, and (c) submitted an order for payment of compensation for $17,862.59; (2) Fredrich (a) was initially appointed by Judge Munson in April 1995 to represent appellant in case No. 143113, (b) was reappointed by Judge Baxter in August 1998 to represent appellant in connection with his post-habeas corpus plea in case No. 143113, and (c) submitted an order for compensation for $1,999.20; and (3) Kohler & Associates sought payment of $520 for services provided in March and April 1998 in connection with the habeas corpus proceeding.

The County argued that the 1994 release agreement and a portion of the reporter's transcript from the March 7, 1996 combined sentencing hearing on cases Nos. 137255 and 143113 provided sufficient evidence that appellant received adequate notice of his potential liability for the costs of legal representation under section 987.8, subdivision (f) (section 987.8(f)).

---

[2]The record does not reveal whether the motion was acted upon.

The transcript from the March 7, 1996 sentencing hearing before Judge Bouliane, at which appellant was present and represented by Fredrich, reflects the following colloquy:

"[THE PROSECUTOR]: The Court did not make any comment to assessing [appellant] reasonable costs for representation.

"THE COURT: Let me say that I think I can only consider the current ability to pay. And I have considered what I have heard and at this point, unless there is something further to be offered, I don't think I can find an ability to pay. Also I'd like to . . . say on the restitution fines, I am implying ability to pay based on prison, wasn't an ability to work after custody.

"[THE PROSECUTOR]: As the Court is aware, that [appellant has] received and returned quite a bit of property that I think would be acceptable collateral. Moreover, remains pending issues with regard to the forfeiture that [appellant] has claimed, I believe money in excess of . . . $48,000.

"THE COURT: Well, I don't have jurisdiction over forfeiture. And I don't think I can consider that to be—I have thought about this. For the legal fees, I've got to consider present ability. I can't make an order to take place on something in the future. Something could certainly be brought to the court's attention at a later date, and I would be happy to entertain it."

Appellant's submissions in opposition to the motion for reimbursement stated that at no time in the writ proceeding before Judge Dondero was he ever advised or given notice by anyone of the matters set forth in section 987.8(f).

When the hearing resumed on April 13, 1999, the court granted the motion for reimbursement after finding that appellant conceded that the County expended $20,381.79 for legal expenses on his behalf in 1998, and that the March 7, 1996 hearing transcript and the 1994 release agreement constituted sufficient evidence that appellant received ample notice that he might have to reimburse the County for legal expenses. In particular the court reasoned that since the 1994 release agreement was signed by appellant "he was certainly notified of the right that the People had to reimbursement because he specifically knew that the County was not going after those fees. And he was released from that. [¶] That was a point of negotiation. [Appellant] was no rookie. He's been around the block in this decade in this court." The court also reasoned that because the subject of reimbursement was specifically discussed at the March 7, 1996 sentencing hearing "certainly [appellant] had to be aware of that since he was present during the discussion." The court

also found that appellant's declaration was "self-serving" and "somewhat incredible." The court ordered that the County "shall collect the $20,381.79 from the $49,542.00 [appellant] claims ownership of, and which is currently in the court's custody," and stayed its ruling pending this appeal.

### DISCUSSION

### I

Appellant contends the trial court erred in finding that he received adequate statutory notice pursuant to section 987.8(f) of his potential liability to the County for legal services it provided. The County rejoins that the 1994 release agreement and the court's statements at the March 7, 1996 sentencing hearing constitute sufficient notice.

Appellant argues that the trial court's finding involved the interpretation and application of a statutory scheme to an undisputed set of facts and therefore is subject to de novo review on appeal. (See *McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 553 [37 Cal.Rptr.2d 472].) The County cites *Conservatorship of Rand* (1996) 49 Cal.App.4th 835, 841 [57 Cal.Rptr.2d 119], and contends that this court reviews an order granting reimbursement under an abuse of discretion standard.

We conclude that neither party has stated the correct standard of review of the court's finding that appellant received sufficient notice of his potential liability for the costs of his legal representation. The appellant is incorrect because the court had to resolve disputed fact issues and thus did not simply apply the law to an agreed set of facts. The County is wrong because the abuse of discretion standard in *Conservatorship of Rand* was applied to determine whether the court erred in failing to recite evidence relevant to the factors related to the appellant's ability to pay enumerated in section 987.8, subdivision (g)(2)(A)-(D). (*Conservatorship of Rand, supra,* 49 Cal.App.4th at p. 841.)

Here, the court was faced with disputed facts as to whether appellant was given notice of his potential for reimbursement. After considering conflicting evidence, the court found there was sufficient evidence that appellant received the notice required under section 987.8(f). Consequently, we review the court's finding under the substantial evidence standard of review. (*American Home Assurance Co. v. Hagadorn* (1996) 48 Cal.App.4th 1898, 1907-1908, fn. 6 [56 Cal.Rptr.2d 536] ["The substantial evidence standard of review applies where the appeal turns on the trial court's determination of disputed factual issues."].)

Section 987.8 establishes the statutory procedure for determining a criminal defendant's ability to reimburse the county for the services of court-appointed counsel. Under this section, a court may order a defendant who has the ability to pay to reimburse the county for all or a portion of the costs of his legal representation.

Section 987.8(f) provides: "Prior to the furnishing of counsel or legal assistance by the court, the court shall give notice to the defendant that the court may, after a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost of counsel. The court shall also give notice that, if the court determines that the defendant has the present ability, the court shall order him or her to pay all or a part of the cost. The notice shall inform the defendant that the order shall have the same force and effect as a judgment in a civil action and shall be subject to enforcement against the property of the defendant in the same manner as any other money judgment."

 "[P]roceedings to assess attorney's fees against a criminal defendant involve the taking of property, and therefore require due process of law, including notice and a hearing." (*People v. Poindexter* (1989) 210 Cal.App.3d 803, 809 [258 Cal.Rptr. 680], citing *People v. Amor* (1974) 12 Cal.3d 20, 29-30 [114 Cal.Rptr. 765, 523 P.2d 1173].) The due process requirements of section 987.8(f) mandate that prior to the appointment of counsel the defendant receive " 'notice reasonably calculated, under all the circumstances' " to apprise him of the potential of his liability for the costs of legal representation and of the possible effects of an order to pay such costs. (See *Amor, supra,* at p. 29, quoting *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [70 S.Ct. 652, 657, 94 L.Ed. 865]; accord, *People v. Phillips* (1994) 25 Cal.App.4th 62, 74 [30 Cal.Rptr.2d 321].)

 In this case the 1994 release agreement and the statements of the court at the March 7, 1996 sentencing hearing were certainly sufficient to alert the appellant that the concept of reimbursement for attorney fees and costs could apply to him. Nonetheless, this alert was not specific enough to advise appellant of the statutorily mandated disclosures that a present ability to pay hearing could occur, that if it were determined that the defendant had a present ability to pay then he may be ordered to pay all or part of the attorney costs, and that such an order would have the same force as a civil judgment against the defendant's property. Thus, the 1994 release agreement and the statements at the March 7, 1996 sentencing hearing were not sufficient to provide the notice required under section 987.8(f).

Such inadequate notice, however, does not mandate that the order of reimbursement be reversed. In *Conservatorship of Rand,* the court considered

whether a conservatee who had been ordered under section 987.8(f) to reimburse attorney fees had been given adequate statutory notice. The only notice given to the conservatee was contained in the form citation for conservatorship that had been served upon him. The form stated " 'The Court will appoint an attorney to represent you. You must pay this attorney if you are able to do so . . . .' " (*Conservatorship of Rand, supra,* 49 Cal.App.4th at p. 840, italics omitted.) Thus, the form was not in compliance with section 987.8(f) in that it did not advise of the right to a hearing and it did not state that an order for attorney fees could be enforced in the same manner as a civil judgment. Nonetheless, the court upheld the trial court's order for payment of attorney fees because it found that the conservatee was not prejudiced by the statutorily inadequate notice he received, since in fact a hearing on present ability to pay occurred and the conservatee was given the fair opportunity to present evidence. (*Conservatorship of Rand, supra,* at pp. 840-841.)

▆▆▆ Under *Conservatorship of Rand* a section 987.8 attorney fees order will not be set aside despite insufficient statutory admonitions where there is no prejudice. This rule is consistent with California's long established policy that procedural error will generally not result in reversal absent prejudice to the defendant. This policy is rooted in article VI, section 13 of the California Constitution, which provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, *or for any error as to any matter of procedure,* unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Italics added.) (See also §§ 1258, 1404; *People v. Sanchez* (1995) 12 Cal.4th 1, 30-31 [47 Cal.Rptr.2d 843, 906 P.2d 1129].)

Recently, in *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194-198 [96 Cal.Rptr.2d 463, 999 P.2d 686], our Supreme Court held that a defendant who has not been given an adequate admonition of the immigration consequence of a guilty plea as mandated by section 1016.5 cannot withdraw his plea absent a showing of prejudice.[3] The court found that the failure to warn adequately under section 1016.5 was a procedural error within the purview of California Constitution, article VI, section 13.

▆▆▆ In this case, appellant has not argued, and the record before us does not demonstrate, that he was prejudiced by the lack of fully compliant notice. Like the conservatee in *Conservatorship of Rand,* appellant was not in

---

[3]Section 1016.5, like section 987.8(f) involved here, requires that the respective warnings "shall" be given.

the dark regarding the possibility he might have to pay attorney fees and costs; he was given notice sufficient to alert him to that possibility. Appellant does not suggest that he would have foregone representation by appointed counsel had he been advised of the possibility that he might have to pay all or a portion of the costs of those services. In addition, he does not contend that he was denied a hearing on his ability to pay, that he lacked the ability to pay for his legal representation, or that the amount of reimbursement ordered by the court was erroneous. To the contrary, defendant was not only given a hearing; that hearing was adjourned to give appellant the opportunity to submit further briefing and for the County to submit an accounting relative to the proposed section 987.8(f) order.

In addition, the failure to admonish the appellant that an attorney fees order under section 987.8(f) would have the same force and effect as a civil judgment did not prejudice him because the fee order was not enforced in the manner of a civil judgment. Instead, it was enforced in the appropriate manner discussed below.

We conclude, based on the record before us, that appellant was not prejudiced by the fact that he was not given notice in compliance with section 987.8(f).

Appellant also asserts that the notice here was also defective because to the extent it may have been given, it was after the services were rendered rather than before counsel was appointed. Appellant is incorrect. As is set forth above, the notice occurred no later than at the March 7, 1996 sentencing hearing on the two cases. The services covered by the section 987.8 order were rendered in connection with the habeas corpus petition and subsequent plea in case No. 143113 by counsel appointed for those purposes after March 7, 1996.

## II

Appellant also contends the court exceeded its statutory authority in ordering the County to collect the $20,381.79 for attorney fees and costs from the funds seized from him and held by the court.

Section 987.8, subdivision (e), provides, in relevant part: "If the court determines that the defendant has the present ability to pay all or a part of the cost [of legal representation], the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability. . . . The order to pay all or a part of the costs

may be enforced in the manner provided for enforcement of money judgments generally but may not be enforced by contempt."

Appellant argues that instead of ordering that the reimbursement order be enforced against "specific property," i.e., the seized funds held by the court, the court should have ordered a money judgment in favor of the County to be enforced in a civil enforcement action.

Appellant is incorrect that the proper procedure for collection under an order for reimbursement of the cost of legal representation under section 987.8 is the entry of a judgment for the amount ordered. In *People v. Hart* (1998) 65 Cal.App.4th 902 [76 Cal.Rptr.2d 837], the court set aside a judgment entered by the trial court for, among other items, legal costs imposed under section 987.8. In so doing, the court held that the Penal Code does not authorize the entry of judgments upon orders for attorney costs but rather permits the enforcement of such orders in the manner provided for the enforcement of money judgments. The court also reasoned that such a separate money judgment would be improper because money judgments bear interest at the rate of 10 percent from date of entry (Code Civ. Proc., §§ 685.010, 685.020), while the Penal Code does not provide for the accrual of interest on attorney cost orders. (*Hart, supra,* at p. 906.)

Even though appellant is incorrect as to the availability of a judgment under section 987.8, it remains to be determined whether that section permits an order directing that payment be made from designated property. Neither party has provided specific authority on this issue, and we have found no case on point.

The County argues that the subject order was proper because courts have inherent authority to enforce their judgments and statutory power to compel obedience to judgments, orders and process (Code Civ. Proc., §§ 128, subd. (a)(4), 177), and "may adopt any suitable process or mode of proceeding that appears most conformable to the Code of Civil Procedure, when the course of the proceeding is not specifically prescribed by statute. (Code Civ. Proc., § 187.)"[4]

We do not have to look to the inherent powers of the court in order to determine if the subject order is proper because section 987.8 offers ample authority on this issue. Simply put, the question here is whether section

[4]The County also argues that collection from the seized funds can be justified as enforcement of the attorney cost order in the manner of a judgment to recover possession of specific property under Code of Civil Procedure section 667. Code of Civil Procedure section 667 allows for the delivery of specific personal property from a judgment debtor who wrongfully possesses such property. This section is inapplicable here.

987.8 authorizes a court to direct payment of its attorney cost order from an identified source. We hold that it does.

 ▇▇ " '[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. . . .' (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) '[S]tatutes must be construed so as to give a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity.' (*People* v. *Martinsen* (1987) 193 Cal.App.3d 843, 848 [238 Cal.Rptr. 530].).)" (*People v. Turner* (1993) 15 Cal.App.4th 1690, 1696 [19 Cal.Rptr.2d 736].)

 ▇▇ The obvious purpose of section 987.8 is to require criminal defendants to reimburse the county for the costs of their trial when, at the conclusion of trial, they have the present ability to do so. (*People v. Cruz* (1989) 209 Cal.App.3d 560, 565 [257 Cal.Rptr. 417].) This recoupment statute reflects a strong legislative policy of shifting the costs of trial from the taxpayers to the defendant. (*People v. Phillips, supra,* 25 Cal.App.4th at pp. 69-70, 76.) In *Phillips,* identification of this legislative policy justified the court's interpretation of section 987.8 so as to allow costs for attorneys to be imposed at sentencing rather than in a separate hearing, thereby avoiding multiple hearings which would cost the taxpayers yet more money. (*Phillips, supra,* at pp. 75-76.)

 With these rules of interpretation in mind, it is clear that section 987.8 allows a court to order payment of attorney costs from a specified source. Section 987.8, subdivision (e), provides that if the court finds that the defendant has the present ability to pay, it "shall set the amount to be reimbursed and order the defendant to pay the sum to the county *in the manner in which the court believes reasonable and compatible with the defendant's financial ability.* . . . The order to pay all or a part of the costs *may* be enforced in the manner provided for enforcement of money judgments generally *but may not be enforced by contempt.*" (Italics added.)

 The statutory delegation of discretion to order payment "in the manner in which the court believes reasonable and compatible with the defendant's financial ability" to pay is not restricted in any way except that such order

"may not be enforced by contempt." (§ 987.8, subd. (e).) Taking the plain meaning of these words, it is apparent that the Legislature did not deem it appropriate to put any limitation on the ability of the court to craft an appropriate manner of payment except that contempt cannot be utilized. Interpreting the statute broadly to accomplish its purpose to shift the burden of attorney costs to the defendant, this court should not read restrictions on the court's discretion that have not been specified by the Legislature.

Appellant's argument is essentially that the court is only authorized to direct a defendant *to pay* but not *how to pay*. Such interpretation would render as surplusage the language requiring that payment be "in the manner in which the court believes reasonable and compatible with the defendant's financial ability" (§ 987.8, subd. (e)). This direction requires that the court must go beyond the bare order to pay and analyze how to fashion the manner of payment so as to be both reasonable and compatible[5] with the defendant's financial condition. This necessarily means that the court consider what resources the defendant has available and which of those resources can support the required payment.

In addition, the statute states that the payment order "may be enforced in the manner provided for enforcement of money judgments generally." (§ 987.8, subd. (e).) It does not say *may only* or *must*. Given the broad legislative purpose to relieve counties of criminal defense financial burdens by allowing for reimbursement from defendants, this language should be broadly read to designate one way to collect the money rather than the only way to do so. Also, had the Legislature intended that the order could only be enforced in the manner provided for the enforcement of judgments, it would not have added the language "but may not be enforced by contempt" (§ 987.8, subd. (e)). Generally, a money judgment is not enforceable by contempt. (Cal. Const., art. I, § 10; *People v. Neal C. Oester, Inc.* (1957) 154 Cal.App.2d Supp. 888, 890 [316 P.2d 784].)

Finally, if section 987.8 were to be interpreted to preclude an order for payment from a specific source, then the effect of such interpretation would be simply to add additional procedural collection burdens on the county. These burdens would include the need to obtain and have served writs of execution (Code Civ. Proc., § 699.510 et seq.) and the possibility of additional court hearings (see, e.g., Code Civ. Proc., § 703.510 et seq.). These burdens would require the expenditure of yet additional public funds. While this outcome is certainly a possibility should a county choose to enforce the payment order as a judgment, it should not be mandated under a statute

---

[5]"Compatible" is defined as "able to be admitted or employed together or to coexist in the same subject, consistent, congruous." (1 New Shorter Oxford English Dict. (1993) p. 458.)

whose purpose is to preserve and restore the public fisc. (See *People v. Phillips, supra,* 25 Cal.App.4th at p. 76.)

## DISPOSITION

The order is affirmed.

Jones, P. J., and Stevens, J., concurred.